1
2
3
4
5
6
7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CURTIS EUGENE SWIRES,

11          Petitioner,              No. 2:12-cv-0509 GEB EFB P

12   vs.

13   FRANK X. CHAVEZ,

14          Respondent.             <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2009 judgment of conviction

18   entered against him in the San Joaquin County Superior Court on charges of first degree

19   residential robbery, elder or dependent adult abuse, first degree burglary, assault with a deadly

20   weapon or by force likely to produce great bodily injury, solicitation to commit a felony,

21   conspiracy, and a violation of probation.  He seeks relief based on his claims that there was

22   insufficient evidence to support his convictions, the prosecutor committed prejudicial

23   misconduct, and his trial counsel rendered ineffective assistance.  Upon careful consideration of

24   the record and the applicable law, the undersigned recommends that petitioner's application for

25   habeas corpus relief be denied.

26   ////

1

## I.    Background[1]

In April 2007, in case No. SF103752A, defendant Curtis Eugene Swires pleaded guilty to theft by embezzlement.  (Pen.Code, § 487, subd. (a).)[2]  Imposition of sentence was suspended and defendant was placed on probation for five years.

In September 2009, in case No. SF110812B, an amended information accused defendant and codefendant Manuel Matthew Zavala of attempted willful, deliberate, premeditated murder (§§ 187, subd. (a)/664; count 1), first degree residential robbery (§§ 211, 212.5, subd. (a); count 2), carjacking (§ 215, subd. (a); count 3), elder or dependent adult abuse (§ 368, subd. (b)(1); count 4), first degree burglary (§ 459; count 5), assault with a deadly weapon or by force likely to produce great bodily injury (§ 245, subd. (a)(1); count 6), and conspiracy (§ 182, subd. (a)(1); count 8). Defendant alone was charged with solicitation to commit a felony. (§ 653f, subd. (a); count 7).[3]

A jury acquitted defendant on counts 1 and 3 and convicted him on counts 2 and 4 through 8.  Based on the convictions, the trial court found that defendant had violated his probation in case No. SF103752A.

In case No. SF110812B, defendant was sentenced to state prison for seven years, consisting of the upper term of six years on count 2 plus one year on count 6.  The remaining counts were stayed pursuant to section 654.  In case No. SF103752A, defendant was sentenced to state prison for a concurrent term of three years.[4]

////

////

////

---

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2]  Further statutory references are to the Penal Code unless otherwise indicated.

[3]  Prior to trial, codefendant Zavala pleaded guilty to counts 1, 2, and 8, and admitted a great bodily injury enhancement on count 1.  He was sentenced to state prison for 12 years.  He is not a party to this appeal.

[4]  The recent amendment to section 2933 does not entitle defendant to additional presentence credit because he was committed for a serious felony.  (§§ 1192.7, subd. (c)(9), 2933, subd. (e)(3).)

On appeal, defendant contends (1) his conviction for residential robbery and resultant probation revocation must be reversed because there was insufficient independent evidence corroborating the statements and testimony of accomplices, and (2) his trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct during summation.  We disagree.

The defendant was convicted as a conspirator or aider and abettor of the perpetrators.  Among other evidence of corroboration, the defendant knew the victim well and traveled regularly in the victim's truck.  He knew that the vehicle likely contained jewelry.  On the day before the robbery, the defendant sent Zavala a text message telling him that "[a]ll good for tomorrow so I could get my buyer set up" and the means of entry of the victim's vehicle without setting off the siren.  This amply corroborated Zavala's testimony linking defendant to the crimes.

We shall affirm the judgment.

**FACTS**

**Prosecution Case–in–Chief**

Franklin Freni and his wife, Christine Freni, lived in Stockton.[5]  Franklin, age 75, was a semi-retired contractor who supplemented his income by trading gold jewelry at several local flea markets.  In December 2008 and January 2009, Franklin routinely went to the Turlock flea market on Tuesdays and to a different flea market on Saturdays and Sundays.  He transported the jewelry in his 2005 Chevrolet truck.

Franklin had known defendant, a fellow flea market vendor, for 12 to 13 years.  By February 2008, they had become friends and would vend from adjacent spaces at flea markets.  Franklin trusted defendant and gave him a set of keys to Franklin's jewelry case.  Defendant regularly drove to Franklin's home at 4:30 a.m. on Tuesdays, and they would drive to Turlock together in Franklin's truck.

On several occasions after February 2008, Franklin noticed that items had disappeared from his truck.  At the end of November 2008, Franklin noticed that his pistol, which he had kept under the truck seat, was missing.  When Franklin asked defendant about the pistol, defendant answered that he had not seen it and that it must have fallen out of the truck.  Unsatisfied with this response, Franklin told defendant that they would not be working together anymore.  At around this time, defendant accused Franklin of having burglarized defendant's residence some time before the

---

[5]  For clarity, we refer to the Frenis by their first names.  No disrespect is intended.

3

pistol disappeared.

On Wednesday, December 3, 2008, the Freni residence was burglarized.  About 9:30 a.m., the doorbell rang and Christine opened the door.  An unfamiliar man said he was looking for "Dwayne Smith."  Christine answered that Smith did not live there. The man was driving a car that Christine recognized as belonging to defendant.  About a half-hour later, Christine received a telephone call from defendant who asked for Franklin and then asked Christine why she was at home and not at work. Christine found the latter question "weird."

Christine left the house.  While on the road, she telephoned Franklin and told him what had happened because "it didn't sit right with [her]."  As the Frenis conversed, Christine received an incoming call from their security company advising that a burglary was in progress at their home.  She told Franklin about the burglary and then returned home.  When she arrived, Christine immediately noticed that the back door was open.

Although Christine was becoming suspicious of defendant, Franklin telephoned him and asked him to come to the house. Defendant did so and stayed at the house while the police were there.  A computer and a wristwatch were missing from the house.

At a flea market 10 days later, defendant demanded that Franklin admit that he had burglarized defendant's house.  Franklin denied burglarizing the house.  In response, defendant told Franklin, "you've got till 11:00 o'clock this morning to give me $7000 or I'm going to rock your world."  He explained, "[y]ou'll lose your family.  You'll lose your grandchildren."  Franklin believed this was "just an empty threat."

Christine became very angry when she learned of Franklin's falling-out with defendant and his threat to her family.  On December 16, 2008, she telephoned defendant and told him to stay away from her family and residence.

In early January 2009, defendant purchased gold from Zavala, an acquaintance with a reputation for stealing jewelry from residences.  Defendant told Zavala that a man named Frank had stolen jewelry and money from defendant's home, and defendant wanted to get retribution by stealing Frank's stuff.[6]  Zavala asked defendant how much he was willing to pay him to steal the items

---

[6] Zavala testified against defendant pursuant to a plea agreement.  On cross-examination, Zavala admitted to writing letters to defendant's wife apologizing and stating that defendant had nothing to do with the incident.  Zavala wrote the letters in exchange for defendant's promise to not reveal Zavala as a snitch.  At defendant's request, Zavala wrote another statement stating that defendant had no knowledge or involvement in the crimes against Franklin.

back.  Defendant said $20,000 and provided Zavala additional details about Franklin, including where he lived, his morning routine, and where to find the jewelry.

Defendant also offered an additional $20,000 for Franklin's ring, which would be either on his finger or in his upstairs bedroom. Defendant explained that he would sell the stolen jewelry and pay Zavala out of the proceeds.  Zavala agreed because he needed money and the "job" sounded easy.  Zavala later recruited a friend, Gerardo Alvarez, to help with the robbery.[7]  Zavala provided the details of the plot, and Alvarez accepted the job.

On January 12, 2009, Zavala sent Alvarez a text message asking if he was ready, and Alvarez answered, "Hell, yeah, I'm ready." Subsequent text messages established that James Bouldt, who had been recruited for the plot, was also ready to assist; and that Alvarez would meet Zavala at his residence around 10:00 p.m. to depart for Stockton.

This same day, defendant sent Zavala a text message asking, "[a]ll good for tomorrow so I could get my buyer set up[?]"  Zavala answered, "[i]t's a go."  After they exchanged several more messages, defendant texted, "Hey, info on truck alarm goes off when you open with a key.  Just push unlock button on door." Zavala answered, "Right on.  Thanks."

On the early morning of January 13, 2009, Zavala, Alvarez, and Bouldt drove to Stockton.  Alvarez drove his mother's white Ford Taurus; Zavala, together with Bouldt, drove a red burgundy Ford Escape.  They stopped at a motel and waited for about an hour before continuing to the Freni residence.  They arrived at the residence at about 2:00 a.m., scanned the area from inside their cars, and then returned to the motel.  They returned to the Freni residence around 3:00 a.m.  Zavala got out of the car and walked around.

Franklin awoke around 3:45 a.m. and prepared to leave for Turlock.  He backed his truck from the garage and walked toward the button that closed the garage door.  As he was pushing the button, Zavala, who had been hiding behind some bushes, began screaming and used a club or stick to strike the side of Franklin's head.  Franklin fell down; Zavala opened a knife and stated, "I'm going to kill you."  Zavala noticed that Franklin was not wearing the ring.  Zavala then stabbed Franklin four or five times.

Christine, from upstairs, asked what was happening in the garage. Franklin told her to call 911.  She came downstairs, saw Franklin

---

[7]  Alvarez entered into a plea agreement releasing him on probation in exchange for his testimony.

on the ground, and went back upstairs despite being ordered by Zavala to kneel next to Franklin.  Zavala followed Christine, pulled her hair, and pushed her down the stairs.  Franklin said, "[d]on't hurt my wife."  He stood, saw Christine fall down the stairs, and then collapsed.

Zavala ran down the stairs, jumped in Franklin's truck, and drove back to Modesto.  The truck contained approximately $70,000 of jewelry and Franklin's wallet.  About two minutes after Zavala drove away, Alvarez and Bouldt followed.  They met in Modesto and eventually brought the contents of Franklin's truck to Zavala's apartment.  Eventually, the three men were paid for the job.

Emergency personnel and law enforcement arrived at the Freni residence and attended to the Frenis' medical needs.  Franklin later offered defendant's name to law enforcement because he was the only person who "had something against" Franklin.  Franklin's truck was found at a street corner in Modesto.

In addition to the jewelry, Zavala took the Frenis' computers, checkbook, credit card, and licenses.  Zavala telephoned the Frenis' bank to obtain information about their account.  Zavala also altered Franklin's driver's license by replacing his photograph with one of Zavala.  Thereafter, Zavala tried to use Franklin's credit card and checks.  These items, among others, were recovered from Zavala's apartment during a search in late January 2009.

**Defense**

Defendant presented no witnesses and relied on the state of the evidence.  His counsel argued that Alvarez and Zavala had implicated defendant in order to obtain favorable plea bargains.

Resp't's Lodg. Doc. 10 (hereinafter Opinion) at 1-9.

## II.   Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[8] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

---

[8] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1  simply because that court concludes in its independent judgment that the relevant state-court

2  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3  application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v.*

4  *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

5  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

6  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

7  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

8  of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

9  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

10  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

11  state court's ruling on the claim being presented in federal court was so lacking in justification

12  that there was an error well understood and comprehended in existing law beyond any possibility

13  for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

14      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

15  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

16  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

17  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

18  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19  considering de novo the constitutional issues raised.").

20      The court looks to the last reasoned state court decision as the basis for the state court

21  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

22  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

23  previous state court decision, this court may consider both decisions to ascertain the reasoning of

24  the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

25  a federal claim has been presented to a state court and the state court has denied relief, it may be

26  presumed that the state court adjudicated the claim on the merits in the absence of any indication

8

1   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

2   presumption may be overcome by a showing "there is reason to think some other explanation for

3   the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

4   803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

5   support its conclusion, a federal habeas court independently reviews the record to determine

6   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

7   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

8   review of the constitutional issue, but rather, the only method by which we can determine

9   whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

10  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

11  there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

12          When it is clear, however, that a state court has not reached the merits of a petitioner's

13  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

14  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

15  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[9]

16          **B.  Petitioner's Claims**

17                  **1.  Insufficient Evidence**

18          In his first ground for federal habeas relief, petitioner claims that the evidence introduced

19  at his trial was insufficient to support his conviction in Case No. SF110812B because it was

20  based largely on the uncorroborated testimony of his accomplices, Zavala and Alvarez.  Dckt.

21  No. 1 at 21, 22-28.  Petitioner notes that, under California law, "a defendant may not be

22  convicted of any crime based on the testimony of another accomplice without additional

23  corroborating evidence." *Id.  See also* Cal. Penal Code § 1111 ("A conviction can not be had

24

25          [9]  The United States Supreme Court has recently granted certiorari in a case apparently to
    consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*
26  *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

1   upon the testimony of an accomplice unless it be corroborated by such other evidence as shall

2   tend to connect the defendant with the commission of the offense . . .).  He contends that

3   "without corroboration, the evidence from the two accomplices is insufficient to establish that

4   [petitioner] was in any manner involved in the crimes that occurred in the early morning of

5   January 13, 2009."  Dckt. No. 1 at 23.

6          In his third ground for relief, petitioner claims that if his conviction in Case No.

7   SF110812B is overturned, his conviction for a violation of probation in Case No. SF103752A,

8   which was based on his conviction in Case No. SF110812B, must also be overturned.  *Id.* at 37.

9          In the last reasoned state court decision on these claims, the California Court of Appeal

10  denied relief.  The court reasoned as follows:

11          Defendant contends there was insufficient evidence to connect him
            to any of the crimes committed by Zavala, Alvarez and Bouldt.  He
12          argues his convictions are "based entirely on the testimony and
            statements of his alleged accomplices, Zavala and Alvarez," which
13          were not "corroborated by other evidence that connects the
            defendant to the commission of the crime," as required by section
14          1111.  In a separate argument, defendant claims this dearth of
            evidence in case No. SF110812B requires reversal of the finding
15          that he violated his probation in case No. SF103752A.  Neither
            point has merit.
16
            "On appeal, the test of legal sufficiency is whether there is
17          substantial evidence, i.e., evidence from which a reasonable trier of
            fact could conclude that the prosecution sustained its burden of
18          proof beyond a reasonable doubt.  [Citations.]  Evidence meeting
            this standard satisfies constitutional due process and reliability
19          concerns.  [Citations.]  [¶]  While the appellate court must
            determine that the supporting evidence is reasonable, inherently
20          credible, and of solid value, the court must review the evidence in
            the light most favorable to the prosecution, and must presume
21          every fact the jury could reasonably have deduced from the
            evidence.  [Citations.]   Issues of witness credibility are for the
22          jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412,
            479–480, 42 Cal.Rptr.3d 677, 133 P.3d 581.)
23
            Section 1111 provides:  "A conviction cannot be had upon the
24          testimony of an accomplice unless it be corroborated by such other
            evidence as shall tend to connect the defendant with the
25          commission of the offense; and the corroboration is not sufficient
            if it merely shows the commission of the offense or the
26          circumstances thereof.  An accomplice is hereby defined as one

10

who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

The jury was instructed that, before it considered the testimony of Alvarez or Zavala, it must decide whether they are accomplices. (CALCRIM No. 334.)  There is no contention that the jury failed to do so.  The jury was further instructed that the testimony of an accomplice must be corroborated.

"The corroborating evidence may be slight and entitled to little consideration when standing alone.  However, it must tend to implicate the defendant by relating to an act that is an element of the crime.  It need not by itself establish every element, but must, without aid from the accomplice's testimony, tend to connect the defendant with the offense.  The trier of fact's determination on the issue of corroboration is binding on review unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime.  [Citations.]"  (People v. Nelson (2011) 51 Cal.4th 198, 218, 120 Cal.Rptr.3d 406, 246 P.3d 301.)

When corroborating evidence is claimed to be inadequate, the court views that evidence "in [its] totality."  (*People v. Luker* (1965) 63 Cal.2d 464, 471, 47 Cal.Rptr. 209, 407 P.2d 9, *cited with approval* in *People v. Hathcock* (1973) 8 Cal.3d 599, 618, 105 Cal.Rptr. 540, 504 P.2d 476.)

In this case, the prosecution presented the following items of independent corroborating evidence:

Defendant was familiar with Franklin's jewelry operation. Franklin trusted defendant and gave him a set of keys to Franklin's jewelry case.

Defendant regularly rode to and from Turlock in Franklin's truck.

Defendant accused Franklin of having burglarized defendant's residence.

The perpetrator of the prior (December 3, 2008) burglary was driving defendant's car, a turquoise sport utility vehicle (SUV) that Christine had seen many times.

Defendant acted surprised that Christine was home.

The December 3, 2008, burglary did not succeed in recovering any jewelry from the Freni residence.

Following the failure of the December 3, 2008 burglary, defendant demanded that Franklin admit that he had burglarized defendant's

house; when that failed, defendant tried to extort $7000 from Franklin.  Defendant threatened to "rock [Franklin's] world," in that he would "lose [his] family," including his "grandchildren."

Just before the January 13 offenses, defendant sent a text message to Zavala stating, " Hey, info on truck alarm goes off when you open [it] with a key.  Just push unlock button on door."

Defendant dismisses the evidence of his prior burglary accusation against Franklin, as well as the prior disappearances of Freni property and prior burglary of the Freni residence, by claiming the prosecution failed to "provide any evidence, independent of Zavala and Alvarez, showing that [he] was connected to the attack on the Frenis."  This illogical argument – that the independent evidence was inadequate because the prosecution presented no independent evidence – seems simply to "will" the inconvenient prior acts out of existence.

Defendant's prior interactions with the Frenis linked him to the present crimes by showing his compelling motive: to recover, recompense, or simply retaliate for, items Franklin allegedly had stolen from defendant.  Franklin illustrated this point when he gave law enforcement defendant's name because he was the only person who "had something against" Franklin.

Under the totality of circumstances (*People v. Luker, supra*, 63 Cal.2d at p. 471, 47 Cal.Rptr. 209, 407 P.2d 9), defendant's prior attempt to extort $7,000 by threatening to "rock [Franklin's] world" tends, at least slightly, to identify defendant as the perpetrator of the present crimes.  Contrary to defendant's argument, no "speculation, conjecture, [or] guesswork" was required.

Defendant claims no evidence identified him as the person who had sent the truck alarm text message from his cell phone; and no evidence other than Zavala's testimony identified Zavala as the person who received it on the cell phone in his name.  Neither point has merit.  The jury was not required to speculate that either phone was being used by anyone other than the person to whom it was registered.  Defendant's points establish, at most, that the weight of this evidence is slight.  For present purposes, slight is enough.  (*People v. Nelson, supra*, 51 Cal.4th at p. 218, 120 Cal.Rptr.3d 406, 246 P.3d 301.)

The evidence showed that defendant knew the victim well and traveled regularly with him in his truck.  He knew that the vehicle likely contained valuable jewelry.  On the day before the robbery, defendant sent a text to Zavala telling him how to enter the truck without setting off the alarm.

////

Defendant claims the truck alarm text message is "entirely innocent" and does not "connect [him] to the crimes unless [it is] interpreted by Zavala." Again, we disagree. The evidence showed that defendant drove a turquoise SUV, and on Tuesdays he rode to and from Turlock in Franklin's 2005 Chevrolet truck. Because the evidence did not link defendant to any other truck, the jury could deduce that the "truck" in the text message was Franklin's Chevrolet and not defendant's SUV. The jury had no duty to speculate that the message referred to some truck not shown by the evidence. In this context the text message to Zavala telling him that "[a]ll good for tomorrow so I could get my buyer set up" and the means of entry of the victim's vehicle without setting off the siren clearly corroborated Zavala's testimony.

Defendant claims "[t]he prosecutor conceded the lack of adequate corroboration, while justifying Zavala's plea bargain agreement, which she characterized as 'a deal with the devil.'" He is not correct.

In closing summation, the prosecutor argued that without Zavala's plea bargain, "you wouldn't have had his testimony. And you wouldn't have had the evidence that you needed to convict [defendant]. Without Manuel Zavala, the People of the State of California could put forth text messages. We couldn't explain them to you. You [would] just have to rely on them."

The prosecutor correctly acknowledged that, by itself, the independent evidence did not constitute proof beyond a reasonable doubt of defendant's guilt. However, she did not concede that this evidence was inadequate even for corroboration. In other words, she did not concede that the evidence's value was less than "slight." (People v. Nelson, supra, 51 Cal.4th at p. 218, 120 Cal.Rptr.3d 406, 246 P.3d 301.) Had the prosecutor so conceded, she could not in good faith have asked the jury to convict defendant on any count.

Because the independent corroborative evidence was sufficient, defendant's insufficiency of evidence and due process arguments necessarily fail. His challenge to the revocation of his probation, based on insufficiency of evidence of new criminal offenses, also fails.

Opinion at 9-15.

The main thrust of petitioner's claims in grounds one and three is that his convictions cannot stand because they were supported only by the uncorroborated testimony of accomplices Zavala and Alvarez. However, in federal court "a conviction may be based on the

13

1   uncorroborated testimony of an accomplice." *United States v. Turner*, 528 F.2d 143, 161 (9th

2   Cir. 1975).  *See also Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("there is no absolute

3   rule of law preventing convictions on the testimony of accomplices if juries believe them.");

4   *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated

5   testimony of an accomplice is enough to sustain a conviction unless it is incredible or

6   insubstantial on its face"); *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007)

7   ("[petitioner], however, has identified no Supreme Court decisions establishing a constitutional

8   requirement that the testimony of an accomplice-witness be corroborated"); *Harrington v. Nix*,

9   983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate

10  constitutional concerns that can be addressed on habeas review.").  California Penal Code

11  § 1111, which requires corroboration of accomplice testimony, is a "state law requirement"

12  which is "not required by the Constitution or federal law." *Laboa v. Calderon*, 224 F.3d 972,

13  979 (9th Cir. 2000).  Petitioner's claim that uncorroborated accomplice testimony was

14  improperly used to support his conviction is based solely on a perceived error of state law and is

15  therefore not cognizable in this federal habeas corpus proceeding.  *Pulley v. Harris*, 465 U.S. 37,

16  41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state

17  law.").

18          Because the testimony of Zavala and Alvarez was neither incredible nor insubstantial on

19  its face, petitioner is only entitled to habeas corpus relief on claims one and three if the state

20  court's alleged violation of state law denied him his due process right to fundamental fairness.

21  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Laboa*, 224 F.3d at 979.  Here, the evidence

22  introduced at petitioner's trial, including the testimony of his accomplices, was sufficient to

23  support his convictions.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (there is sufficient

24  evidence to support a conviction if, "after viewing the evidence in the light most favorable to the

25  prosecution, any rational trier of fact could have found the essential elements of the crime

26  beyond a reasonable doubt.").  Further, "[a] State violates a criminal defendant's due process

right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement."

*Laboa*, 224 F.3d at 979 (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). State criminal

procedures do not violate the Due Process Clause unless they "offend[] some principle of justice

so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). Here, the California Court of Appeal carefully

reviewed the evidence and determined that, under state law, sufficient evidence, even aside from

the accomplice testimony, supported petitioner's convictions. This determination by the Court

of Appeal is supported by the facts of this case and does not constitute an arbitrary denial of a

state law entitlement. Further, the court's ruling does not offend any fundamental principle of

justice or render petitioner's trial fundamentally unfair. Accordingly, petitioner is not entitled to

relief on his claim that there was insufficient evidence to support his convictions in Case Nos.

SF103752A and SF110812B.

### 2. Ineffective Assistance of Counsel/Prosecutorial Misconduct

In his second ground for relief, petitioner claims that the prosecutor committed

misconduct when, during her closing argument, she compared petitioner to Charles Manson, Al

Capone and Osama bin Laden. He also claims that his trial counsel rendered ineffective

assistance in failing to object to these remarks by the prosecutor. Dckt. No. 1 at 29-36. The

California Court of Appeal denied these claims, reasoning as follows:

> Defendant contends his trial counsel rendered ineffective
> assistance when she failed to object to the prosecutor's "irrelevant
> inflammatory argument" regarding Charles Manson, Al Capone,
> and Osama Bin Laden, whom she described as "infamous people
> that have been convicted, indicted or accused of conspiracy." We
> are not persuaded.
>
> **Background**
>
> The prosecutor argued during her opening summation as follows:
> "Liability for co-conspirators. A member of a conspiracy is
> criminally responsible for the crimes that he conspires to commit
> no matter which member of the conspiracy commits the crime, and
> is criminally responsible for any act of any member of the
> conspiracy if that act is done in further – to further the conspiracy,

and is a natural and probable consequence.  [¶]  Let me tell you right now, ladies and gentlemen, your job whether or not there was solicitation and conspiracy, is not going to be difficult.  The evidence is strong.  Where you are going to work and where you are going to talk is what crimes are natural and probable consequences, and that's what we'll talk about now.  [¶]  I don't know if you recognize any of these pictures.  In my opening I told you that the law of conspiracy has been around since the 1900s, and there are infamous people that have been convicted, indicted or accused of conspiracy.  Charles Manson, Al Capone and Osama Bin Laden.  Let me preface it by saying, I'm not saying that the defendant is in any way related or his crimes are the same as these individuals, but what I'm saying is conspiracy has been around a long time.  [¶]  One of the things you may hear from the defense counsel is that [defendant] wasn't even there, you can't hold him responsible.  Well, that's not what the law of conspiracy is.  Because Charles Manson was also not there when Sharon Tate was murdered, and he was convicted of conspiracy.  [¶]  Al Capone, I can assure you, was not at most of the crime scenes that he instigated, but he was never convicted of conspiracy.  He went to prison on racketeering [sic] because nobody would talk.  None of the other members of the conspiracy would testify against him.  [¶]  And Osama Bin Laden was indicted by the United States government back in 1993 for conspiracy to commit terrorist crimes.  Now, that hasn't gone to trial, so who knows who will talk, provided we ever find him.  [¶]  The point is, conspiracy law has been around a long time, and it holds people responsible if they are involved in the crime.  They do not have to be there.  They have to conspire, and then they are responsible for whatever acts happen that are natural and probable consequences."

## Analysis

"'The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"  [Citations.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'"  [Citation.]'  [Citation.]"  (*People v. Hill* (1998) 17 Cal.4th 800, 819, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

"Regarding the scope of permissible prosecutorial argument, [our supreme court] recently noted "'a prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.  [Citations.]  It is also clear that counsel during summation may

16

state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.' [Citation.] 'A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness' " [citation], and he may "use appropriate epithets. . . .""' [Citation.]' [Citation.]" (*People v. Hill, supra*, 17 Cal.4th at p. 819, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

"'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion – and on the same ground – the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' [Citation.]" (*People v. Hill, supra*, 17 Cal.4th at p. 820, 72 Cal.Rptr.2d 656, 952 P.2d 673.) "A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if '"an admonition would not have cured the harm caused by the misconduct."' [Citations.] Finally, the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' [Citations.]" (*Id.* at pp. 820–821, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

In this case, defendant forfeited his claim of misconduct because his trial counsel did not object to the prosecutor's remarks, move to strike her argument or the accompanying photographs, or request a curative admonition; and none of the foregoing exceptions to forfeiture applies. (*People v. Hill, supra*, 17 Cal.4th at pp. 820–821, 72 Cal.Rptr.2d 656, 952 P.2d 673.) We thus turn to his argument that the forfeiture constitutes ineffective assistance.

"'"[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]'" (*People v. Avena* (1996) 13 Cal.4th 394, 418, 53 Cal.Rptr.2d 301, 916 P.2d 1000; fn. omitted.)

"'"[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal

must be rejected.'  [Citations.]  A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.  [Citations.]"  (*People v. Tello* (1997) 15 Cal.4th 264, 266–267, 62 Cal.Rptr.2d 437, 933 P.2d 1134.)

In this case, defendant's trial counsel was not asked to explain her reasons for failing to object to the prosecutor's remarks.  Moreover,

on this record, there could be a satisfactory explanation for her omission.

Defense counsel could have believed an objection would lack merit in light of the prosecutor's explanation that she was not comparing defendant's crimes to those of Bin Laden, Capone or Manson; and that she was using those well-known criminals to illustrate that conspiracy law has been in existence for a long time. Case law has approved a prosecutor's use of the Manson case to illustrate aider and abettor theory, which is analogous to the conspiracy theory here at issue.  (*People v. Luparello* (1986) 187 Cal.App.3d 410, 428–429, 231 Cal.Rptr. 832.)  In this case, the prosecutor used the Bin Laden and Capone matters to make the same point, and she did not make "an impassioned plea aimed at the jury's fears and anxieties."  (*Id.* at p. 429, 231 Cal.Rptr. 832.) Finally, nothing in the present record suggests that the photographs were objectionable separate and apart from the accompanying argument.  Any ineffective assistance claim must be brought in a petition for habeas corpus.

We note that, in future cases, the prosecution would be well advised to minimize any possible prejudice by illustrating the principle of vicarious liability with, at most, one rather than three of the most notorious and infamous criminals of modern times.  No harm would accrue to the prosecutor's case, and a potential appellate issue could be avoided.

Opinion at 15-20.

As set forth above, the California Court of Appeal concluded that petitioner forfeited this claim of prosecutorial misconduct by failing to make a contemporaneous objection to the prosecutor's statements.  Respondent argues that the state court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of that claim.  Dckt. No. 12 (Answer) at 27-28.

State courts may decline to review a claim based on a procedural default.  *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question

1  of federal law decided by a state court if the decision of that court rests on a state law ground that

2  is independent of the federal question and adequate to support the judgment.'" *Calderon v.*

3  *United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v.*

4  *Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

5  established and regularly followed." *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

6  *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

7  ground for decision must be well-established and consistently applied.")  The state rule must also

8  be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202

9  F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).

10  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

11  show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

12  law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

13  *Coleman*, 501 U.S. at 749-50.

14      Respondent has met his burden of adequately pleading an independent and adequate state

15  procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

16  deny that his trial counsel did not raise a contemporaneous objection to the prosecutor's closing

17  remarks about notorious criminals.  Although the state appellate court addressed petitioner's

18  claim of prosecutorial misconduct on the merits, it also expressly held that the claim was waived

19  on appeal because of defense counsel's failure to object.  Petitioner has failed to meet his burden

20  of asserting specific factual allegations that demonstrate the inadequacy of California's

21  contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either

22  as a general rule or as applied to him. *Bennett*  322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d

23  1120, 1124-26 (9th Cir. 2002).  Petitioner's claim therefore appears to be procedurally barred.

24  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*,

25  371 F.3d 1083, 1092-93 (9th Cir. 2004).

26  ////

1    Petitioner has also failed to demonstrate that there was cause for his procedural default or

2   that a miscarriage of justice would result absent review of the claim by this court.  *See Coleman*,

3   501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  Ineffective assistance

4   of counsel will establish cause to excuse a procedural default if it was "so ineffective as to

5   violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446,  451 (2000) (citing

6   *Murray v. Carrier*, 477 U.S. 478, 486–88 (1986)).  However, trial counsel's failure here to object

7   to the prosecutor's closing remarks does not rise to the level of a constitutional violation.  As the

8   Ninth Circuit explained in *Necoechea*, "[b]ecause many lawyers refrain from objecting during

9   opening statement and closing argument, absent egregious misstatements, the failure to object

10   during closing argument and opening statement is within the 'wide range' of permissible

11   professional legal conduct."  986 F.2d at 1281.  *See also Cunningham v. Wong*, ___ F.3d ___,

12   2013 WL 69198, **13-14 (9th Cir. 2013) ("Under *Necoechea,* [trial counsels'] decision not to

13   object to (the prosecutor's) comments (during his closing argument), possibly to avoid

14   highlighting them, was a reasonable strategic decision"); *United States v. Daas*, 198 F.3d 1167,

15   1179 (9th Cir. 1999) (trial counsel's failure to object to possible vouching during the

16   prosecutor's closing argument "falls within the range of permissible professional conduct of trial

17   counsel").  However, even if petitioner's claim of prosecutorial misconduct is not procedurally

18   barred, it should be denied for the following reasons.

19    A criminal defendant's due process rights are violated when a prosecutor's misconduct

20   renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims

21   of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

22   determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

23   resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.

24   1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

25   *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

26   ////

1    Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

2    misconduct resulted in actual prejudice.  *Darden*, 477 U.S. at 181-83.  *See also Towery*, 641 F.3d

3    at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

4    doubt, a federal court may not grant habeas relief unless the state court's determination is

5    objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

6    substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-*

7    *Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)

8         "Improper argument does not, per se, violate a defendant's constitutional rights."  *Jeffries*

9    *v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).  In considering claims of prosecutorial

10   misconduct involving allegations of improper argument, the court must examine the likely effect

11   of the statements in the context in which they were made and determine whether the comments

12   so infected the trial with unfairness as to render the resulting conviction a denial of due process.

13   *Darden*, 477 U.S. at 181-83; *Donnelly*, 416 U.S. at 643; *Turner v. Calderon*, 281 F.3d 851, 868

14   (9th Cir. 2002).  In fashioning closing arguments, prosecutors are allowed "reasonably wide

15   latitude," *United States v. Birges*, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue

16   "reasonable inferences from the evidence."  *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir.

17   1989).  *See also Ducket v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995).  "[Prosecutors] may strike

18   'hard blows,' based upon the testimony and its inferences, although they may not, of course,

19   employ argument which could be fairly characterized as foul or unfair."  *United States v.*

20   *Gorostiza*, 468 F.2d 915, 916 (9th Cir. 1972).  "[I]t 'is not enough that the prosecutors' remarks

21   were undesirable or even universally condemned.'"  *Darden*, 477 U.S. at 181 (citation omitted).

22   The issue is whether the "remarks, in the context of the entire trial, were sufficiently prejudicial

23   to violate [petitioner's] due process rights."  *Donnelly*, 416 U.S. at 639; *United States v.*

24   *Robinson*, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . .").

25   ////

26   ////

1    After a review of the record, the court concludes that the prosecutor in this case did not

2    commit prejudicial misconduct in closing argument.  Although the prosecutor referred to three

3    notorious criminals to illustrate her point that the laws of conspiracy had been in existence for a

4    long time, she specifically told the jury that she wasn't attempting to compare petitioner to these

5    criminals but was simply using their example as evidence on this point.  These comments

6    lessened the impact of the challenged remarks.  The prosecutor did not misstate any evidence or

7    implicate important constitutional rights.  In addition, the trial court instructed the jurors that

8    their decision was to be made on the basis of the evidence alone, that the arguments of counsel

9    were not evidence, and that they were not to be influenced by sympathy or prejudice.  Clerk's

10   Transcript on Appeal (CT) at 366, 372.  Considering the record as a whole, there is no possibility

11   the prosecutor's remarks in her closing argument could have had a substantial and injurious

12   effect or influence on the verdict in this case.  Accordingly, petitioner is not entitled to relief on

13   his claim of prosecutorial misconduct.  *See Darden*, 477 U.S. at 180 n.10, 11 & 12; 182 (not

14   improper argument where prosecutors called the defendant an "animal," asserted that he should

15   be kept on a leash, expressed their wish that his face had been blown off during his crimes, and

16   argued that he deserved the death penalty to prevent him from ever terrorizing the public again);

17   *Comer v. Schriro*, 463 F.3d 934 (9th Cir. 2006) (argument not improper where prosecutor called

18   defendant "monster," "filth," and a "reincarnation of the devil," because the argument did not

19   manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such

20   as the right to counsel or the right to remain silent); *Dubria v. Smith*,  224 F.3d 995, 1004 (9th

21   Cir. 2000) (prosecutor's reference to defense argument as "a piece of garbage" and defendant as

22   "a liar" found not to be improper).

23   Petitioner has also failed to demonstrate ineffective assistance of counsel in failing to

24   object to the prosecutor's closing remarks.  To support a claim of ineffective assistance of

25   counsel, a petitioner must first show that, considering all the circumstances, counsel's

26   performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466

U.S. 668, 687-88 (1984).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S.Ct. at 792.  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Richter*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689.)

As set forth above, a trial attorney's failure to object to a prosecutor's closing argument, unless the argument grossly mischaracterizes the record, does not constitute ineffective assistance of counsel.  *Cunningham,*, 2013 WL 69198, at **13-14; *Necoechea*, 986 F.2d at 1276); *Daas*, 198 F.3d at 1179.  The prosecutor's statements in this case did not mischaracterize the record, nor did they render petitioner's trial fundamentally unfair.  Accordingly, his trial counsel did not render ineffective assistance in failing to object.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 23, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE